# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| CBL & ASSOCIATES | § | |
| PROPERTIES, INC., *et al.*, | § | Case No. 20-35226 (DRJ) |
| | § | |
| Debtors.[1] | § | (Joint Administration Requested) |
| | § | (Emergency Hearing Requested) |

## EMERGENCY MOTION OF DEBTORS
## FOR INTERIM ORDER (I) AUTHORIZING
## THE DEBTORS TO USE CASH COLLATERAL, (II) DETERMINING
## ADEQUATE PROTECTION, (III) MODIFYING THE AUTOMATIC STAY,
## (IV) SCHEDULING A FINAL HEARING, AND (V) GRANTING RELATED RELIEF

> **EMERGENCY RELIEF HAS BEEN REQUESTED. A <u>VIDEO/TELEPHONIC</u> HEARING WILL BE CONDUCTED ON THIS MATTER ON NOVEMBER 2, 2020 AT 12:00 P.M. (PREVAILING CENTRAL TIME). PARTIES WISHING TO PARTICIPATE TELEPHONICALLY MUST DIAL IN USING THE COURT'S TELECONFERENCE SYSTEM AT 832-917-1510 AND ENTERING CONFERENCE CODE 205691. PARTIES WHO ALSO WISH TO PARTICIPATE BY VIDEOCONFERENCE MAY DO SO BY USE OF AN INTERNET CONNECTION, USING THE WEBSITE GOTOMEET.ME/JUDGEJONES, SELECTING "JOIN A MEETING," AND ENTERING MEETING CODE "judgejones"**
>
> **IF YOU OBJECT TO THE RELIEF REQUESTED OR YOU BELIEVE THAT EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU MUST EITHER APPEAR AT THE HEARING OR FILE A WRITTEN RESPONSE PRIOR TO THE HEARING. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**
>
> **RELIEF IS REQUESTED NOT LATER THAN NOVEMBER 2, 2020.**

---

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/CBLProperties. The Debtors' service address for the purposes of these chapter 11 cases is 2030 Hamilton Place Blvd., Suite 500, Chattanooga, Tennessee 37421.

CBL & Associates Properties, Inc. and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), respectfully represent as follows in support of this motion (the "**Motion**"):[2]

### Preliminary Statement

1. By this Motion, the Debtors seek authority, to the extent necessary and applicable, to use Cash Collateral (as defined herein) of the Bank Lenders and the Property Lenders (as defined herein) on a limited basis and solely to the extent necessary to maintain and operate the Properties in the ordinary course.

2. As set forth in the First Lien Credit Agreement and related documents, the Bank Lenders have a security interest in rents generated by the Credit Facility Properties, but the Administrative Agent does not have any perfected security interest with respect to any deposit account control agreements, although certain Bank Lenders may purport to have a security interest through control of certain accounts and could, subject to the automatic stay, exercise setoff rights thereon. To the extent those rents enter the Debtors' estates, the Debtors intend to segregate postpetition rents—net of operating expenses applicable to the Credit Facility Properties, including utilities, employee expenses, management fees, taxes, insurance costs, required capital expenditures, tenant allowances, and other expenses incurred in the ordinary course of business—and not commingle such cash with the Debtors remaining cash until the Court makes a determination on the issues raised in the *Debtors' Emergency Motion for an Order (1) Granting a Temporary Restraining Order and (2) Granting a Preliminary Injunction Enjoining Wells Fargo's Improper Exercise of Remedies* (the "**Bank Lender Litigation**").

---

[2] The facts and circumstances supporting the relief requested herein are set forth in the First Day Declaration (as defined herein) filed contemporaneously herewith. Capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the First Day Declaration.

3. As demonstrated below and in the First Day Declaration, the Bank Lenders are adequately protected because (a) the Bank Lenders are under-secured, as demonstrated by the Debtors' recent appraisals, (b) the Debtors are continuing to maintain and operate the Credit Facility Properties, including maintaining insurance and making required capital and operating expenditures, (c) the value of the Credit Facility Properties is likely to increase from current historic lows as the Company progresses through to the other side of the pandemic, (d) as described in the Cash Management Motion, all net rents of the Credit Facility Properties during the Interim Period will be segregated and will not be used by the Debtors absent a further order authorizing such use.

4. As to the Debtors' properties that are financed by commercial real-estate-backed (CMBS), Non-Recourse Loans, and Recourse Loans (each as defined herein), those properties are owned in whole or in part by certain non-Debtor entities (the "**Non-Debtor Property-Level Entities**"). The Debtors do not believe the net proceeds that are distributed to the Debtors from the Non-Debtor Property-Level Entities constitute Cash Collateral of the Property Lenders, but seek authority to use any such cash to the extent the Property Lenders purport to have an interest in those net proceeds, with the assurance that the Debtors and Non-Debtor Property-Level Entities will continue to make ordinary course interest payments and satisfy other obligations, subject to limited exceptions, arising under the applicable Property Level Loan Documents (as defined herein).

**Background**

5. Beginning on November 1, 2020 (the "**Petition Date**"), the Debtors each commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"). The Debtors are authorized to continue to operate their businesses and

manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee, examiner, or statutory committee of creditors has been appointed in these chapter 11 cases.  Contemporaneously herewith, the Debtors have filed a motion requesting joint administration of their chapter 11 cases pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Rule 1015-1 of the Local Rules of the United States Bankruptcy Court for the Southern District of Texas (the "**Local Bankruptcy Rules**").

6. The Debtors commenced these chapter 11 cases on a prearranged basis with the support of an ad hoc group holding over 62% of the outstanding principal amount under the Debtors' senior unsecured notes (the "**Consenting Noteholders**").  The Consenting Noteholders have committed to support the comprehensive restructuring set forth in that certain Restructuring Support Agreement (together with all exhibits and attachments thereto and as may be subsequently amended in accordance with its terms, the "**Restructuring Support Agreement**"), dated as of August 18, 2020, and in the restructuring term sheet attached thereto.  Consistent with their obligations under the Restructuring Support Agreement, the Debtors intend to file a proposed plan of reorganization and disclosure statement with the Court in the near term and are seeking to emerge from chapter 11 on an expedited timeframe.

7. Additional information regarding the Debtors' business, capital structure, the Restructuring Support Agreement, and the circumstances leading to the commencement of these chapter 11 cases is set forth in the *Declaration of Mark Renzi in Support of Debtors' Chapter 11 Petitions and First Day Motions*, sworn to on November 2, 2020 (the "**First Day Declaration**"), which has been filed with the Court contemporaneously herewith and is incorporated by reference herein.

4

## Jurisdiction

8. The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Relief Requested

9. Pursuant to sections 105, 361, 362(d), 363(c), 363(e), 503(b), and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6004, and 9014, Local Rule 4001-1, and the Procedures for Complex Chapter 11 Bankruptcy Cases (the "**Complex Case Procedures**") promulgated by the United States Bankruptcy Court for the Southern District of Texas (the "**Court**"), the Debtors request entry of an interim order, substantially in the form attached hereto as **Exhibit A** (the "**Interim Order**"), providing, among other things:

   a. authority for the Debtors' limited use of Cash Collateral (as defined under section 363 of the Bankruptcy Code) of Wells Fargo Bank, National Association ("**Wells Fargo**") in its capacity as administrative agent (in such capacity, the "**Administrative Agent**") under that certain Credit Agreement, dated as of January 30, 2019, by and among CBL & Associates Limited Partnership, as borrower, the REIT, as parent, the lenders party thereto (the "**Bank Lenders**"; and together with the Administrative Agent, the "**First Lien Secured Parties**"; such First Lien Credit Agreement, the "**First Lien Credit Agreement**," and together with all related loan documents, the "**First Lien Loan Documents**") solely to maintain and cover the ordinary course operating expenses of the Credit Facility Properties (as defined herein);

   b. authority for the Debtors to use Cash Collateral, if any, of the lenders (the "**Property Lenders**" and, together with the First Lien Secured Parties, the "**Prepetition Secured Parties**") under certain non-recourse mortgage loans (the "**Non-Recourse Loans**") and certain other loans with recourse to the general credit of the Operating Partnership, including constructions loans (the "**Recourse Loans**" and, together with the Non-Recourse Loans, the "**Property Level Loans**" and, together with all related loan documents, the "**Property Level Loan Documents**" and, together with the First Lien Loan Documents, the "**Prepetition Loan Documents**"), in accordance with the terms and conditions set forth herein;

   c. the determination of adequate protection for the Prepetition Secured Parties with respect to their interests in the Properties (as defined herein);

5

d. modification of the automatic stay of section 362 of the Bankruptcy Code (the "**Automatic Stay**") to the limited extent provided herein;

e. a waiver of any applicable stay (including under Bankruptcy Rule 6004) with respect to the effectiveness and enforceability of the Interim Order and providing for the immediate effectiveness of the Interim Order;

f. scheduling a final hearing (the "**Final Hearing**") with respect to the relief requested herein within thirty (30) days of the Petition Date and approving notice with respect thereto in accordance with Bankruptcy Rules 4001(b) and (d); and

g. entry of a final order approving the relief granted in the Interim Order (as such relief may be modified on notice in advance of the Final Hearing) on a final basis (the "**Final Order**").

## Bankruptcy Rule 4001 Summary

10. In accordance with Bankruptcy Rules 4001(b)(1)(B) and 4001(d)(1)(B) and Rule 21 of the Complex Case Procedures, the following table summarizes the material terms of the Interim Order:

| Provision and Applicable Bankruptcy Rule | Material Terms | Location |
|---|---|---|
| **Parties asserting an Interest in Cash Collateral** Fed. R. Bankr. P. 4001(b)(1)(B)(i) | The Prepetition Secured Parties. | Interim Order, Preamble, (a)(i), (ii) |
| **Purposes for Use of Cash Collateral** Fed. R. Bankr. P. 4001(b)(1)(B)(ii) | The Debtors have an immediate and ongoing need to use Cash Collateral to, among other things, satisfy payroll and other working capital and general corporate purposes at the Property-Level Entities to the extent set forth in the Interim Order. | Interim Order, ¶ 11. |
| **Budget Provisions** Fed. R. Bankr. P. 4001(b)(1)(B)(iii) | The Interim Order does not include any budget provisions. | N/A |
| **Duration of Use of Cash Collateral / Termination Date** Fed. R. Bankr. P. 4001(b)(1)(B)(iii) | The Debtors are authorized to use Cash Collateral pursuant to the Interim Order from the Petition Date pending entry of a Final Order. | Interim Order, ¶ 12. |
| **Termination Events** Fed. R. Bankr. P. 4001(b)(1)(B)(iii) | The Interim Order does not include any termination events. | N/A |

| | | |
|---|---|---|
| **Liens, Cash Payments or Adequate Protection Provided for Use of Cash Collateral** Fed. R. Bankr. P. 4001(b)(1)(B)(iv) | Adequate Protection for Bank Lenders. In consideration for the Debtors' use of Cash Collateral, the Debtors will: <br> i. continue to operate and maintain their business and the Credit Facility Properties in the ordinary course of business, including the payment of associated wages, management fees, taxes, insurance costs, necessary capital expenditures, tenant allowances, and other operational expenses; and <br> ii. segregate all postpetition net proceeds from operation of the Credit Facility Properties. <br><br> Adequate Protection for Property Lenders. In consideration for the Debtors' use of Cash Collateral, to the extent the Property Lenders have valid interests in net proceeds flowing from the Non-Debtor Property-Level Entities up to the Debtors, the Debtors will use the rents generated by the Mortgage Loan Properties to: <br> i. make ordinary course interest payments and satisfy other obligations, subject to limited exceptions, arising under the Property Level Loan Documents in accordance with the terms thereof; and <br> ii. continue to operate the Mortgage Loan Properties in the ordinary course of business, including the payment of associated wages, management fees, taxes, insurance costs, necessary capital expenditures, tenant allowances, and other operational expenses. <br><br> Cash Management. As further adequate protection during the Interim Period, the Debtors will maintain their cash management arrangements in a manner consistent with those described in the Cash Management Motion and any corresponding order of the Court with respect thereto. | Interim Order, ¶ 14. |
| **Liens on Avoidance Actions** Fed. R. Bankr. P. 4001(b)(1)(B)(iv) | The Interim Order does not provide for any liens on avoidance actions or proceeds of avoidance actions. | N/A |
| **Carve Out** Fed. R. Bankr. P. 4001(b)(1)(B)(iii) | The Interim Order does not provide for a carve out for any fees or expenses. All parties' rights are reserved with respect to allocation of professional fees and other expenses among the Debtors and the ability of the Debtors to surcharge collateral of any secured party with respect thereto. | N/A |
| **Waiver or Modification of the Automatic Stay** Fed. R. Bankr. P. 4001(b)(1)(B)(iii) | The automatic stay under section 362 of the Bankruptcy Code will be modified to the extent necessary to implement and to effectuate the terms and provisions of the Interim Order. | Interim Order, ¶ 16. |
| **Section 506(c) Waiver** Fed. R. Bankr. P. 4001(b)(1)(B)(iii) | The Interim Order does not provide for a waiver of any the Debtors' rights under section 506(c) of the Bankruptcy Code or any similar principle of law. All rights are explicitly preserved. | N/A |
| **Section 552(b)(1) Waiver** Fed. R. Bankr. P. 4001(b)(1)(B)(iii) | The Interim Order does not provide for a waiver of any parties' rights and benefits arising under section 552(b) of the Bankruptcy Code. | N/A |
| **Stipulations of the Debtors** Fed. R. Bankr. P. 4001(b)(1)(B)(iii) | The Interim Order does not contain any stipulations regarding the validity, perfection, and priority of the Prepetition Secured Claims and other obligations arising under the Prepetition Loan Documents and is without prejudice to the rights of any party to assert or contest such validity, perfection, and priority. | N/A |

| | | |
|---|---|---|
| **Release, Waivers or Limitation on any Claim or Cause of Action** Fed. R. Bankr. P. 4001(b)(1)(B)(iii) | The Interim Order does not provide for any releases, waivers, or limitations on any Claims (as defined in the Bankruptcy Code) or causes of action. | N/A |

**Statement Regarding Significant Provisions**

11. The Interim Order does not contain any of the provisions (the "**Significant Provisions**")[3] identified under Rule 21 of the Complex Case Procedures.

**Debtors' Prepetition Secured Debt and Collateral**[4]

12. <u>Prepetition First Lien Claims</u>.  As of the Petition Date, pursuant to the First Lien Loan Documents, the First Lien Secured Parties may assert prepetition claims against certain of the Debtors in an aggregate amount equal to: (a) $439 million in aggregate principal amount of term loans plus (b) $676 million in aggregate principal amount of revolving loans plus (c) prepetition accrued interest and all fees, costs, expenses (including any attorneys', financial advisors', and other professionals' fees and expenses), premiums (if any), reimbursement obligations, indemnification obligations, contingent obligations, and all other charges of whatever nature, whether or not contingent, whenever arising, due, or owing, and all other Obligations (as defined in the First Lien Credit Agreement) owing under or in connection with the First Lien Loan Documents whether arising prepetition or postpetition, including postpetition interest at the default rate (collectively, the "**Prepetition First Lien Claims**").

---

[3] Significant Provisions consist of: (a) sale or plan confirmation milestones; (b) cross-collateralization; (c) roll ups; (d) liens on avoidance actions or proceeds of avoidance actions; (e) default provisions and remedies; (f) releases of claim against lender or others; (g) limitations on fees for advisors to official committees; (h) priming liens; and (i) any other provision that limits the ability of estate fiduciaries to fulfill their duties under the Bankruptcy Code and applicable law.

[4] A full description of the Debtors' secured funded debt obligations, along with certain unsecured and other obligations, is set forth in the First Day Declaration.  This summary is qualified in its entirety by reference to the First Day Declaration and, to the extent there are any inconsistencies between this summary and the First Day Declaration, the First Day Declaration shall control.  The Debtors are not stipulating to the validity of any security interests and all parties' rights to challenge the amount and secured nature of the claims are expressly preserved.

13. The Prepetition First Lien Claims are secured in accordance with the terms of the First Lien Loan Documents, including by direct or indirect pledges of certain of the Debtors' properties (the "**Credit Facility Properties**") from certain Debtor entities owning such Credit Facility Properties (the "**Credit Facility Property Entities**" and, together with the Non-Debtor Property-Level Entities, the "**Property-Level Entities**").

14. Prepetition Property Level Secured Claims. As of the Petition Date, pursuant to the Property Level Loans, the Property Level Lenders may assert prepetition claims against certain non-Debtor affiliates in an aggregate amount equal to approximately $2 billion plus prepetition accrued interest and all fees, costs, expenses, owing under or in connection with Property Level Loans (collectively, the "**Property Level Secured Claims**" and, together with the Prepetition First Lien Claims, the "**Prepetition Secured Claims**").

15. The Property Level Secured Claims are secured in accordance with the Property Level Loan Documents, including by, among other things, mortgages and assignments of leases and rents encumbering certain properties (the "**Mortgage Loan Properties**" and, together with the Credit Facility Properties, the "**Properties**") owned by the Non-Debtor Property-Level Entities.

### Debtors' Need for and Proposed Use of Cash Collateral

16. The Debtors require immediate access to Cash Collateral solely to maintain and cover the ordinary course operating expenses of the Properties and avoid the operational and administrative burden that would result if the Debtors were required to unnecessarily reconfigure their cash management procedures to maintain the Properties.[5]

---

[5] The Debtors may seek expanded use of Cash Collateral or postpetition financing should the need arise during these cases.

17. Without a prompt grant of authority to use their cash according to these terms, the Debtors will be forced to reconfigure their internal flow of funds to satisfy payroll, management fees, taxes, and other expenses incurred in the ordinary course of operations at the Properties. An inability to satisfy such obligations would significantly hinder the Property-level operations and cause immediate and irreparable harm to the value of the Debtors' estates to the detriment of all stakeholders. Conversely, immediate access to Cash Collateral for the limited purposes requested herein will maintain the status quo, preserve the value of the Properties and, thereby, preserve the value of the Debtors' estates, and permit the Debtors to continue to operate as a going concern during the Interim Period (as defined herein). Accordingly, the use of Cash Collateral in accordance with the terms of the Interim Order is essential to the Debtors' ability to minimize disruptions and maximize value for their estates and parties in interest.

18. Initially, the Debtors seek authority for the limited use of Cash Collateral until a Final Order has been entered by the Court (the "**Interim Period**"). During this Interim Period, the Debtors will fund operations of the Property-Level Entities in the ordinary course in accordance with the Interim Order. Thereafter, the Debtors will seek authority to use Cash Collateral in accordance with a Final Order, which the Debtors will submit a proposed form of order to the Court before the Final Hearing on this Motion.

### Basis for Relief Requested

**A.     Debtors Should be Authorized to Use Cash Collateral.**

19. A debtor's use of property of the estate, including Cash Collateral, is governed by section 363 of the Bankruptcy Code. Under section 363(c)(2) of the Bankruptcy Code, a debtor may use Cash Collateral if "(A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section." 11 U.S.C. § 363(c)(2). Section 363(e) of the

Bankruptcy Code further provides that parties with a security interest in a debtor's cash collateral are entitled to adequate protection as a condition to the debtor's use of such assets. *Id.* § 363(e) ("[O]n request of an entity that has an interest in property . . . to be used, sold or leased, by the trustee, the court . . . shall prohibit or condition such use, sale or lease as is necessary to provide adequate protection of such interest.").

20. The Bankruptcy Code does not expressly define "adequate protection" or proscribe a particular form that it must take. *See In re Las Torres Dev., L.L.C.*, 413 B.R. 687, 696–97 (Bankr. S.D. Tex. 2009) (noting that the Bankruptcy Code "contains no specific, definitive definition of adequate protection.") (citing *In re First S. Sav. Ass'n,* 820 F.2d 700, 710 (5th Cir. 1987)); 11 U.S.C. § 361 (providing a non-exhaustive list of examples of adequate protection, including (i) a lump sum or periodic cash payments; (ii) replacement liens; and (iii) administrative priority claims). Generally, courts decide what constitutes adequate protection on a case-by-case basis. *See In re First S. Sav. Ass'n,* 820 F.2d at 710 (noting, with respect to adequate protection, that "[i]ts application is left to the vagaries of each case") (quoting *In re Becker Indus.,* 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986)); *Resolution Tr. Corp. v. Swedeland Dev. Grp., Inc. (In re Swedeland Dev. Grp., Inc.)*, 16 F.3d 552, 564 (3d Cir. 1994) ("[A] determination of whether there is adequate protection is made on a case by case basis."); *In re Mosello*, 195 B.R. 277, 289 (Bankr. S.D.N.Y. 1996) ("The determination of adequate protection is a fact specific inquiry.").

21. Consistent with the purposes underlying the provision of adequate protection, the Interim Order provides the Prepetition Secured Parties with sufficient provisions to protect them from any diminution in value of their prepetition interests during the Interim Period.

22. As set forth herein, with respect to the Bank Lenders, the Debtors are only proposing to use Cash Collateral to pay the ongoing, ordinary course operational expenses of the

11

Credit Facility Properties. The Bank Lenders are inherently protected from any diminution in value of their interest in the Credit Facility Properties because such use simply maintains operations and preserves the value of the Credit Facility Properties securing the Prepetition First Lien Claims. *See In re 499 W. Warren St. Assocs., Ltd. P'ship*, 142 B.R. 53, 56 (Bankr. N.D.N.Y. 1992) ("A secured creditor's interest in the collateral itself is adequately protected when a portion of the rents are applied to its operation and maintenance."); *In re Pine Lake Vill. Apartment Co.,* 16 B.R. 750, 756 (Bankr.S.D.N.Y.1982) (same); *In re R & G Properties, Inc.*, No. 08-10876, 2009 WL 2043875, at *6 (Bankr. D. Vt. July 6, 2009) (same). Further, the Bank Lenders' interests in rents from the Credit Facility Properties are similarly adequately protected when a portion of the rents is reinvested in the property for operational expenses and maintenance. *See In re 499 W. Warren St. Assocs., Ltd. P'ship*, 142 B.R. at 56-7 ("Funds so utilized contribute to the generation of additional rents upon which that creditor's security interest subsequently attaches"); *Federal Nat. Mortg. Ass'n v. Dacon Bolingbrook Assocs. Ltd. P'ship*, 153 B.R. 204 (N.D. Ill. 1993) ("[T]he required adequate protection of [r]ents is satisfied to the extent the Debtor reinvests the rents in the operation and maintenance of the property because the value of the secured creditor's interest in its collateral will thereby be increased.").

23.     Additionally, all net proceeds from the Credit Facility Properties will be segregated and held in escrow by the Debtors and will not be used by the Debtors pending further interim or Final Order authorizing use of such funds. As such, the Bank Lenders are not entitled to any additional adequate protection as the Debtors use of Cash Collateral will not result in any diminution in value of their interests.

24.     Further, the Debtors are ultimately not requesting any relief that they would not otherwise be entitled to under the Bankruptcy Code. Absent satisfaction of ordinary course

business expenses, the operations of the Credit Facility Properties would be severely hindered, which, in turn, would result in a diminution in value of the Bank Lenders' interests therein. If the Debtors were required to use cash generated by other Debtor entities to preserve the value of the Credit Facility Properties, the Debtors would preserve all rights to recover such associated costs and expenses from the Bank Lenders pursuant to section 506(c) of the Bankruptcy Code. Authorizing the use of Cash Collateral to operate the Credit Facility Properties simply maintains the status quo and preserves the value of the Debtors' estates by avoiding the administrative burden and expense that would be associated with the Debtors funding the operations and later seeking to recover those expenses.

25. With respect to the Property Lenders, as stated above and detailed in the First Day Declaration, the Property Level Secured Claims are secured by interests in the Mortgage Loan Properties, which are owned wholly or in part by the Non-Debtor Property-Level Entities. Solely to the extent the Property Lenders have valid interests in net proceeds distributed from the Mortgage Loan Properties to the Debtors, they are likewise adequately protected from any diminution in value of those interests. The Debtors will use the rents generated by the Mortgage Loan Properties to (a) make ordinary course interest payments and satisfy other obligations, subject to limited exceptions, arising under the Property Level Loan Documents in accordance with the terms thereof, and (b) operate and preserve the value of the Mortgage Loan Properties in the ordinary course of business by paying associated wages, management fees, taxes, and other operational expenses. As such, the Property Lenders are adequately protected from any diminution in value of their interests associated with the Debtors' use of Cash Collateral.

26. The Debtors respectfully submit that the proposed adequate protection sufficient for the Debtors to continue to use Cash Collateral for the limited purposes requested

herein. Accordingly, the Court should determine that the adequate protection package is fair and reasonable, satisfies the requirements of sections 363(c)(2) and 363(e) of the Bankruptcy Code, and in the best interests of the Debtors and their estates.

### B. Automatic Stay Should Be Modified to a Limited Extent

27. The relief requested herein contemplates a limited modification of the automatic stay to permit the Debtors and each of the Prepetition Secured Parties to perform the transactions and actions contemplated or permitted by the Interim Order.

28. Courts typically approve stay modifications of this when requested in connection with a debtor's request to use Cash Collateral. *See, e.g.*, *In re Gavilan Res., LLC*, No. 20-32656 (MI) (Bankr. S.D. Tex. May 18, 2020) (Docket No. 55) (approving provision modifying automatic stay in connection with debtors' use of cash collateral); *In re EP Energy Corp.*, No. 19-35654 (MI) (Bankr. S.D. Tex. Oct. 4, 2019) (Docket No. 62) (same); *In re Jones Energy, Inc.*, No. 19-32112 (DRJ) (Bankr. S.D. Tex. Apr. 15, 2019) (Docket No. 78) (same); *In re Westmoreland Coal Co.*, No. 18-35672 (DRJ) (Bankr. S.D. Tex. Oct. 10, 2018) (Docket No. 92) (same); *In re Seadrill Ltd.*, No. 17-60079 (DRJ) (Bankr. S.D. Tex. Sept. 13, 2017) (Docket No. 98) (same); *In re Sherwin Alumina Co., LLC*, No. 16-20012 (DRJ) (Bankr. S.D. Tex. Jan. 13, 2016) (Docket No. 76) (same).

29. Here, the stay relief provisions are a reasonable exercise of the Debtors' business judgment, are appropriate under the present circumstances, and, accordingly, should be approved.

### C. Interim Relief Is Warranted

30. Under Bankruptcy Rule 4001(b), the Court may grant interim relief under section 363(c) of the Bankruptcy Code where, as here, such relief is "necessary to avoid immediate and irreparable harm to the estate pending a final hearing." In evaluating requests for interim

relief, courts generally apply the same business judgment standard applicable to other business decisions. *See, e.g.*, *In re Ames Dep't Stores, Inc.*, 115 B.R. at 40. Courts in this district routinely authorize debtors to use cash collateral on an interim basis to prevent immediate and irreparable harm to their estates. *See, e.g.*, *In re EP Energy Corp.*, No. 19-35654 (MI) (Bankr. S.D. Tex. Oct. 4, 2019) (Docket No. 62) (approving debtors' use of cash collateral on an interim basis); *In re Jones Energy, Inc.*, No. 19-32112 (DRJ) (Bankr. S.D. Tex. Apr. 15, 2019) (Docket No. 78) (same); *In re Westmoreland Coal Co.*, No. 18-35672 (DRJ) (Bankr. S.D. Tex. Oct. 10, 2018) (Docket No. 92) (same); *In re Seadrill Ltd.*, No. 17-60079 (DRJ) (Bankr. S.D. Tex. Sept. 13, 2017) (Docket No. 98) (same); *In re Sherwin Alumina Co., LLC*, No. 16-20012 (DRJ) (Bankr. S.D. Tex. Jan. 13, 2016) (Docket No. 76) (same).

31. Here, the Debtors and their estates will suffer immediate and irreparable harm if the relief requested herein is not granted on an interim basis. The Debtors' business depends on their ability to maintain property-level operations, including using property-level rent proceeds to satisfy the operational expenses of such properties. Deviation from the ordinary course cash management mechanics at the property levels will be overly burdensome on the Debtors and divert time and resources that would be better allocated towards implementing the contemplated restructuring. Accordingly, the Court should grant the relief requested herein on an interim basis.

### D. Court Should Schedule a Final Hearing

32. Pursuant to Bankruptcy Rule 4001(b)(2), the Debtors request that the Court schedule a hearing to consider entry of the Final Order. The Debtors request that they be authorized to serve a copy of the signed Interim Order, which fixes the time and date for the filing of objections, if any, by first class mail upon the notice parties listed below and that such notice of the Final Hearing be deemed sufficient under Bankruptcy Rule 4001(b)(3).

15

**Debtors Have Satisfied Bankruptcy Rule 6003(b)**

33.     Pursuant to Local Bankruptcy Rule 9013-1, the Debtors respectfully request emergency consideration of this Motion under Bankruptcy Rule 6003, which provides that the Court may grant relief within the first twenty-one (21) days after the Petition Date to the extent such relief is necessary to avoid immediate and irreparable harm.  As described herein and in the First Day Declaration, the relief requested is essential to avoid the immediate and irreparable harm that would be caused by the Debtors' inability to transition smoothly into chapter 11.  Accordingly, the Debtors submit that the requirements of Bankruptcy Rule 6003 are satisfied.

**Bankruptcy Rules 6004(a) and (h)**

34.     To implement the foregoing successfully, the Debtors request that the Court find that notice of the Motion is adequate under Bankruptcy Rule 6004(a) under the circumstances, and waive the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).  As explained above and in the First Day Declaration, the relief requested herein is necessary to avoid immediate and irreparable harm to the Debtors.  Accordingly, ample cause exists to justify finding that the notice requirements under Bankruptcy Rule 6004(a) have been satisfied and to grant a waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h), to the extent such notice requirements and such stay apply.

**Reservation of Rights**

35.     Nothing contained herein is intended to be or shall be deemed as (i) an admission as to the validity of any claim against the Debtors, (ii) a waiver or limitation of the Debtors' or any party in interest's rights to dispute the amount of, basis for, or validity of any claim, (iii) a waiver of the Debtors' rights under the Bankruptcy Code or any other applicable nonbankruptcy law, (iv) an agreement or obligation to pay any claims, (v) a waiver of any claims or causes of action which may exist against any creditor or interest holder, (vi) an admission as to

the validity of any liens satisfied pursuant to this Motion, or (vii) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy under section 365 of the Bankruptcy Code. Likewise, if the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended to be and should not be construed as an admission to the validity of any claim or a waiver of the Debtors' rights to dispute such claim subsequently.

## Notice

36. Notice of this Motion will be provided to (i) the U.S. Trustee; (ii) the holders of the thirty (30) largest unsecured claims against the Debtors on a consolidated basis; (iii) Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, Bank of America Tower, New York, NY 10036 (Attn: Michael Stamer, Meredith Lahie, and Kevin Zuzolo), on behalf of the Consenting Noteholders; (iv) Jones Day, 250 Vesey Street, New York, NY 10281 (Attn: David Paulson, Brett Barragate, and Benjamin Rosenblum), on behalf of the Administrative Agent; (v) the Internal Revenue Service; (vi) the United States Attorney's Office for the Southern District of Texas; (vii) the Securities and Exchange Commission; and (viii) any other party entitled to notice pursuant to Local Bankruptcy Rule 9013-1(d) (collectively, the "**Notice Parties**"). The Debtors believe that no further notice is required under the circumstances.

## No Previous Request

37. No previous request for the relief sought herein has been made by the Debtors to this or any other court.

[*Remainder of page intentionally left blank*]

WHEREFORE the Debtors respectfully request entry of the Proposed Orders granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated: November 2, 2020
       Houston, Texas

Respectfully submitted,

 /s/ Alfredo R. Pérez
WEIL, GOTSHAL & MANGES LLP
Alfredo R. Pérez (15776275)
700 Louisiana Street, Suite 1700
Houston, Texas  77002
Telephone: (713) 546-5000
Facsimile:  (713) 224-9511
Email:  Alfredo.Perez@weil.com

-and-

WEIL, GOTSHAL & MANGES LLP
Ray C. Schrock, P.C. (*pro hac vice* admission pending)
Garrett A. Fail (*pro hac vice* admission pending)
Moshe A. Fink (*pro hac vice* admission pending)
767 Fifth Avenue
New York, New York  10153
Telephone:  (212) 310-8000
Facsimile:   (212) 310-8007
Email: Ray.Schrock@weil.com
       Garrett.Fail@weil.com
       Moshe.Fink@weil.com

*Proposed Attorneys for Debtors
and Debtors in Possession*

## Certificate of Service

I hereby certify that on November 2, 2020, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas, and will be served as set forth in the Affidavit of Service to be filed by the Debtors' proposed claims, noticing, and administrative agent.

                                                                 */s/ Alfredo R. Pérez*
                                                                 Alfredo R. Pérez