IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| CBL & ASSOCIATES | § | |
| PROPERTIES, INC., *et al.*, | § | Case No. 20-35226 (DRJ) |
| | § | |
| Debtors.[1] | § | (Jointly Administered) |
| | § | |

### INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO USE CASH COLLATERAL, (II) DETERMINING ADEQUATE PROTECTION, (III) MODIFYING THE AUTOMATIC STAY, (IV) SCHEDULING A FINAL HEARING, AND (V) GRANTING RELATED RELIEF

Upon the *Emergency Motion of Debtors for Interim Order (I) Authorizing the Debtors to Use Cash Collateral, (II) Determining Adequate Protection, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief*, dated November 2, 2020 (the "**Motion**")[2] of CBL & Associates Properties, Inc. (the "**REIT**") and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), for entry of an order pursuant to sections 105, 361, 362(d), 363(c), 363(e), 503(b), and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6004, and 9014, Rule 4001-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "**Bankruptcy Local Rules**") and the Procedures for Complex Chapter 11 Cases in the Southern District of Texas (the "**Complex Case Rules**"):

---

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/CBLProperties.  The Debtors' service address for the purposes of these chapter 11 cases is 2030 Hamilton Place Blvd., Suite 500, Chattanooga, Tennessee 37421.

[2] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Motion.

(a) entry of an interim order (this "**Interim Order**") providing:

    (i) authority for the Debtors' limited use of Cash Collateral (as defined herein) of Wells Fargo Bank, National Association ("**Wells Fargo**") in its capacity as administrative agent (in such capacity, the "**Administrative Agent**") under that certain Credit Agreement, dated as of January 30, 2019, by and among CBL & Associates Limited Partnership, as borrower, the REIT, as parent, the lenders party thereto (the "**Bank Lenders**"; and together with the Administrative Agent, the "**First Lien Secured Parties**"; such First Lien Credit Agreement, the "**First Lien Credit Agreement**," and together with all related loan documents, the "**First Lien Loan Documents**") solely to maintain and pay the ordinary course operating expenses, necessary capital expenditures, and tenant allowances, and other expenses of the Credit Facility Properties (as defined herein);

    (ii) authority for the Debtors to use Cash Collateral, if any, of the lenders (the "**Property Lenders**" and, together with the First Lien Secured Parties, the "**Prepetition Secured Parties**") under certain non-recourse mortgage loans (the "**Non-Recourse Loans**") and certain other loans with recourse to the general credit of the Operating Partnership, including constructions loans (the "**Recourse Loans**" and, together with the Non-Recourse Loans, the "**Property Level Loans**" and, together with all related loan documents, the "**Property Level Loan Documents**" and, together with the First Lien Loan Documents, the "**Prepetition Loan Documents**"), in accordance with the terms and conditions set forth herein;

    (iii) the determination of adequate protection for the Prepetition Secured Parties with respect to their interests in the Properties (as defined herein);

    (iv) modification of the automatic stay of section 362 of the Bankruptcy Code (the "**Automatic Stay**") to the limited extent provided herein;

    (v) a waiver of any applicable stay (including under Bankruptcy Rule 6004) with respect to the effectiveness and enforceability of this Interim Order and providing for the immediate effectiveness of this Interim Order;

(b) scheduling the Final Hearing (as defined herein) within thirty (30) days of the Petition Date and approving notice with respect thereto in accordance with Bankruptcy Rules 4001(b) and (d); and

(c) entry of a final order approving the relief granted in this Interim Order (as such relief may be modified on notice in advance of the Final Hearing) on a final basis (the "**Final Order**");

and the Court having considered the Motion and the evidence submitted at the hearing held before this Court on November 2, 2020, to consider entry of this Interim Order (the "**Interim Hearing**");

and in accordance with Bankruptcy Rules 2002, 4001(b) and (d), 6004, and 9014 and the Bankruptcy Local Rules and Complex Case Rules, due and proper notice of the Motion and the Interim Hearing having been given; and it appearing that approval of the interim relief requested in the Motion (as modified by this Interim Order) is necessary to avoid immediate and irreparable harm to the Debtors pending the Final Hearing and is otherwise fair and reasonable and in the best interests of the Debtors, their creditors, and their estates, and essential for the continued operation of the Debtors' business; and all objections, if any, to the entry of this Interim Order having been withdrawn, resolved or overruled by the Court; and after due deliberation and consideration, and for good and sufficient cause appearing therefor,

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**

1.  Based upon the pleadings and the evidence presented at the Interim Hearing before this Court, this Court hereby grants the relief herein, on an interim basis, pursuant to Bankruptcy Rule 4001 to prevent immediate and irreparable harm to the Debtors and their estates. Therefore, consistent with sections 361, 362, 363, 503(b), and 507 of the Bankruptcy Code, this Court hereby finds and orders:

2.  **Objections**. Any objections to the Motion that have not been withdrawn, waived, or settled, and all reservations of rights included therein, are hereby denied and overruled on the merits. This Interim Order shall become effective immediately upon its entry.

3.  **Opportunity to Object**. Pursuant to Bankruptcy Rule 4001(d)(2), any objection to the entry of the Final Order must be filed on or before **4:00 a.m./p.m. Central Time on [●], 2020** (the "**Objection Deadline**"). A final hearing on the Motion shall take place on **[●], 2020, at [●] a.m./p.m. Central Time** before the Honorable [●], United States Bankruptcy Judge, at the United States Court for the Southern District of Texas (the "**Court**"), Houston Division, 515 Rusk

3

Street, Courtroom 404, Houston, Texas 77002 (the "**Final Hearing**").  Objections shall be in writing and shall be filed with the clerk of the Court on or before the Objection Deadline.

4. **Petition Date**.  Beginning on November 1, 2020 (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with this Court.

5. **Jurisdiction**.  This Court has jurisdiction over this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. § 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), (D), (G), (K), (M), and (O).

6. **Notice**.  Sufficient and adequate notice of the Motion and the Interim Hearing has been given to prevent immediate and irreparable harm pursuant to Bankruptcy Rules 2002, 4001, 6004, 9006, and 9014 and the Bankruptcy Local Rules and Complex Case Rules, and as required by sections 102, 105, 361, 362, and 363 of the Bankruptcy Code.  Other than the notice provided for herein, no further notice of the interim relief sought in the Motion is necessary.

7. **Cash Collateral**.  For purposes of this Interim Order, the term **"Cash Collateral"** shall be deemed to include, without limitation, all of each Debtor's "Cash Collateral" as defined under section 363 of the Bankruptcy Code.

8. **Prepetition Secured Claims**.  As of the Petition Date, pursuant to the First Lien Loan Documents, the First Lien Secured Parties may assert prepetition claims against certain of the Debtors in an aggregate amount equal to: (a) $439 million in aggregate principal amount of term loans plus (b) $676 million in aggregate principal amount of revolving loans plus (c) prepetition accrued interest and all fees, costs, expenses (including any attorneys', financial advisors', and other professionals' fees and expenses), premiums (if any), reimbursement obligations, indemnification obligations, contingent obligations, and all other charges of whatever

nature, whether or not contingent, whenever arising, due, or owing, and all other Obligations (as defined in the First Lien Credit Agreement) owing under or in connection with First Lien Loan Documents whether arising prepetition or postpetition including postpetition interest at the default rate (collectively, the "**Prepetition First Lien Claims**").

9. As of the Petition Date, pursuant to the Property Level Loans, the Property Level Lenders may assert prepetition claims against certain non-Debtor affiliates in an aggregate amount equal to approximately $2 billion plus prepetition accrued interest and all fees, costs, expenses, owing under or in connection with Property Level Loans (collectively, the "**Property Level Secured Claims**" and, together with the Prepetition First Lien Claims, the "**Prepetition Secured Claims**").

10. **Prepetition Collateral**. The Prepetition First Lien Claims are secured in accordance with the terms of the First Lien Loan Documents, including direct or indirect pledges of certain of the Debtors' properties (the "**Credit Facility Properties**") from certain Debtor entities owning such Credit Facility Properties (the "**Credit Facility Property Entities**"). The Property Level Secured Claims are secured in accordance with the Property Level Loan Documents, including, among other things the borrowing interest in certain of the Debtors' properties (the "**Mortgage Loan Properties**" and, together with the Credit Facility Properties, the "**Properties**") owned by certain non-Debtor affiliates (the "**Non-Debtor Property-Level Entities**" and, together with the Credit Facility Property Entities, the "**Property-Level Entities**").

11. **Urgent Need to Use Cash Collateral**. The relief granted hereunder is critical and necessary to avoid immediate and irreparable harm to the Debtors' estates. The Debtors require immediate access to Cash Collateral to maintain and cover the ordinary course operating expenses of the Properties and avoid the operational and administrative burden that would result if the

Debtors were required to unnecessarily reconfigure their cash management procedures to maintain the Properties.  Without a prompt grant of authority to use their cash including Cash Collateral, if any, according to these terms, the Debtors will be forced to reconfigure their internal flow of funds to satisfy payroll, management fees, taxes, and other expenses incurred in the ordinary course of operations at the Properties.  An inability to satisfy such obligations would significantly hinder the Property-level operations and cause immediate and irreparable harm to the value of the Debtors' estates to the detriment of all stakeholders.  Good, adequate, and sufficient cause has been shown to justify the granting of the relief requested herein.  The use of Cash Collateral will benefit the Debtors and their estates.  Accordingly, the use of Cash Collateral by the Debtors is actual and necessary to preserving their estates.

12. **Authority to Use Cash Collateral**.  The Debtors are hereby authorized to use all Cash Collateral and all proceeds of the Prepetition Secured Parties in accordance with the terms of this Interim Order.

13. **Cash Management Compliance**.  The Debtors shall maintain their cash management arrangements in a manner consistent with any order granting the *Emergency Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing Debtors to Continue (A) Using Existing Cash Management System, Bank Accounts, and Business Forms and (B) Funding Intercompany Transactions, (II) Providing Administrative Expense Priority for Postpetition Intercompany Claims, and (III) Granting Related Relief*.

14. **Adequate Protection for the Prepetition Secured Parties**.  The Prepetition Secured Parties are entitled, pursuant to Bankruptcy Code sections 361, 363(c)(2), and 363(e), to adequate protection of their interests in the Cash Collateral to the extent that the imposition of the Automatic Stay, any use, sale, lease, depreciation, or disposition of Cash Collateral during the

chapter 11 cases, or any grant of a lien on their interests in the Collateral permitted by this Interim Order results in diminution in the value of their interests in the Cash Collateral from and after the Petition Date.

  (a) <u>Adequate Protection for Bank Lenders</u>.  In consideration for the Debtors' use of Cash Collateral, the Debtors will:

   i. continue to maintain and operate the Credit Facility Properties in the ordinary course of business, including the payment of associated wages, management fees, taxes, insurance costs, necessary capital expenditures, tenant allowances, and other operational expenses; and

   ii. segregate all postpetition net proceeds from operation of the Credit Facility Properties.

  (b) <u>Adequate Protection for Property Lenders</u>.  In consideration for the Debtors' use of Cash Collateral, to the extent the Property Lenders have valid interests in net proceeds distributed from the Non-Debtor Property-Level Entities to the Debtors, the Debtors will use the rents generated by the Mortgage Loan Properties to:

   i. make ordinary course interest payments and satisfy other obligations, subject to limited exceptions, arising under the Property Level Loan Documents in accordance with the terms thereof; and

   ii. continue to maintain and operate the Mortgage Loan Properties in the ordinary course of business, including the payment of associated wages, management fees, taxes, insurance costs, necessary capital expenditures, tenant allowances, and other operational expenses.

15. **Limited Modification of Automatic Stay**.  The Automatic Stay is hereby modified solely to the extent necessary to permit the Debtors to commit all acts and take all actions necessary to implement this Interim Order and all acts, actions, and transfers contemplated herein.

16. **No Third Party Rights.**  Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder or any

direct, indirect, third-party or incidental beneficiary. Nothing herein shall create, nor is intended to create, any rights in favor of or enhance the status of any claim held by, any party.

17. **Reservation of Rights**. Nothing contained in the Motion or this Interim Order or any payment made pursuant to the authority granted by this Interim Order is intended to be or shall be deemed as (i) an admission as to the validity of any claim against the Debtors, (ii) a waiver of the Debtors' or any party in interest's rights to dispute the amount of, basis for, or validity of any claim, (iii) a waiver of the Debtors' rights under the Bankruptcy Code or any other applicable nonbankruptcy law, (iv) an agreement or obligation to pay any claims, (v) a waiver of any claims or causes of action which may exist against any creditor or interest holder, including those arising under section 552(b) and 506(c) of the Bankruptcy Code, or (vi) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy under section 365 of the Bankruptcy Code.

18. **Survival of Interim Order**. The provisions of this Interim Order and any actions taken pursuant hereto shall survive entry of any order that may be entered (i) confirming any chapter 11 plan in any of the Debtors' chapter 11 cases; (ii) converting any Debtor's chapter 11 case to a case under chapter 7 of the Bankruptcy Code; (iii) dismissing any Debtor's chapter 11 case; or (iv) withdrawing of the reference of any of the chapter 11 cases from this Court.

19. **Immediate Effectiveness of Interim Order**. This Interim Order, and the findings of fact and conclusions of law contained herein, shall be effective immediately upon signature by the Court, and may be relied upon by the Prepetition Secured Parties. To the extent any findings may constitute conclusions, and vice versa, they are hereby deemed as such. Any applicable stay (including, without limitation, under Bankruptcy Rule 6004(h)) is hereby waived and shall not apply to this Interim Order.

20. **Retention of Jurisdiction**.  The Court hereby expressly retains jurisdiction to enforce the terms of this Interim Order and to adjudicate any and all disputes in connection herewith by motion and without necessity of an adversary proceeding.

21. **Headings**.  All headings in this Interim Order are descriptive and for reference only, and do not have separate meaning or change any terms therein.

22. **Notice**.  The Debtors shall serve this Interim Order on the following parties: (i) the U.S. Trustee; (ii) the holders of the thirty (30) largest unsecured claims against the Debtors on a consolidated basis; (iii) Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, Bank of America Tower, New York, NY 10036 (<u>Attn</u>: Michael Stamer, Meredith Lahie, and Kevin Zuzolo), on behalf of the Consenting Noteholders; (iv) Jones Day, 250 Vesey Street, New York, NY 10281 (Attn: David Paulson, Brett Barragate, and Benjamin Rosenblum), on behalf of the Administrative Agent; (v) the Internal Revenue Service; (vi) the United States Attorney's Office for the Southern District of Texas; (vii) the Securities and Exchange Commission; and (viii) any other party entitled to notice pursuant to Local Bankruptcy Rule 9013-1(d) (collectively, the "**Notice Parties**").  No further notice is required under the circumstances.

Dated: _____, 2020
      Houston, Texas                                           UNITED STATES BANKRUPTCY JUDGE