IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| CBL & ASSOCIATES | § | |
| PROPERTIES, INC., *et al.*, | § | Case No. 20-35226 (DRJ) |
| | § | |
| Reorganized Debtor.[1] | § | (Jointly Administered) |

**REORGANIZED DEBTOR'S MOTION FOR ENTRY
OF FIFTH FINAL DECREE CLOSING REMAINING
<u>CHAPTER 11 CASE *NUNC PRO TUNC* TO DECEMBER 31, 2022</u>**

> **IF YOU OBJECT TO THE RELIEF REQUESTED, YOU MUST RESPOND IN WRITING, SPECIFICALLY ANSWERING EACH PARAGRAPH OF THIS PLEADING. UNLESS OTHERWISE DIRECTED BY THE COURT, YOU MUST FILE YOUR RESPONSE WITH THE CLERK OF THE BANKRUPTCY COURT WITHIN TWENTY-ONE DAYS FROM THE DATE YOU WERE SERVED WITH THIS PLEADING. YOU MUST SERVE A COPY OF YOUR RESPONSE ON THE PERSON WHO SENT YOU THE NOTICE; OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

CBL & Associates Properties, Inc., as the debtor in the above-captioned chapter 11 case (the "**Debtor**" and, as reorganized, the "**Reorganized Debtor**"), respectfully represents the matters set forth below in support of this motion (the "**Motion**")[2]:

**Relief Requested**

1. Pursuant to section 350(a) of title 11 of the United States Code (the "**Bankruptcy Code**"), and Rule 3022 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the Reorganized Debtor seeks entry of a fifth final decree and order,

---

[1] A complete list of the Reorganized Debtors in these chapter 11 cases may be obtained on the website of the Reorganized Debtors' claims and noticing agent at https://dm.epiq11.com/CBLProperties. The Reorganized Debtors' service address for the purposes of these chapter 11 cases is 2030 Hamilton Place Blvd., Suite 500, Chattanooga, Tennessee 37421.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Plan (as defined below).

substantially in the form attached hereto as **Exhibit A** (the "**Proposed Fifth Final Decree**"), closing the remaining chapter 11 case of the Reorganized Debtor (the "**Remaining Case**").

2. The Reorganized Debtor is seeking to have the Remaining Case closed *nunc pro tunc* to December 31, 2022, to avoid additional U.S. Trustee fees for the first quarter of 2023.

## Jurisdiction

3. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Background

4. Beginning on November 1, 2020 (the "**Petition Date**"), the Debtor and certain of its affiliates (collectively, the "**Debtors**" and, as reorganized, the "**Reorganized Debtors**")[3] each commenced with this Court a voluntary case under the Bankruptcy Code. No trustee, examiner, or statutory committee of creditors was appointed in these chapter 11 cases.

5. The Debtors' chapter 11 cases were jointly administered for procedural purposes only pursuant to Rule 1015(b) of the Bankruptcy Rules and Rule 1015-1 of the Bankruptcy Local Rules for the United States Bankruptcy Court for the Southern District of Texas (the "**Local Rules**").

6. On August 11, 2021, the Court entered the *Findings of Fact, Conclusions of Law, and Order (I) Confirming Third Amended Joint Chapter 11 Plan of CBL & Associates Properties, Inc. and its Affiliated Debtors and (II) Granting Related Relief* [Docket No. 1397] (the "**Confirmation Order**") confirming the *Third Amended Joint Chapter 11 Plan of CBL &*

---

[3] The Court previously entered orders closing all of the Reorganized Debtors' cases aside from the Remaining Case [*See* Docket Nos. 1670, 1785, 1786, and 1874].

2

*Associates Properties, Inc. and its Affiliated Debtors (with Technical Modifications)* [Docket No. 1369] (as amended, supplemented, and modified, including pursuant to the Court's order entered on October 26, 2021, at Docket No. 1521, the "**Plan**"). Pursuant to paragraph 42 of the Confirmation Order, the Confirmation Order is a final order, and the period in which an appeal must be filed commenced upon entry of the Confirmation Order. No appeal was filed.

7. On November 1, 2021 (the "**Effective Date**"), all conditions to effectiveness of the Plan occurred and the Plan became effective. Upon the occurrence of the Effective Date, pursuant to section 7.4 of the Plan, a disputed claims reserve (the "**Disputed Claims Reserve**") was established to make distributions to holders of Unsecured Claims and Section 510(b) Claims that were Disputed Claims as of the Distribution Record Date and determined to be Allowed Claims thereafter. The Disputed Claims Reserve was funded with the consideration for distribution to holders of Disputed Claims if and when such Claims are Allowed.

8. All transactions and distributions required to be made under the Plan have been made in accordance with the terms thereof. The Debtors have funded (or reserved for) the amounts to be distributed under the Plan. While the Remaining Case remained open predominantly for claims reconciliation, all claims of creditors in the chapter 11 cases have been paid, resolved, or properly reserved for consistent with the relevant provisions of the Plan.

9. As contemplated and required by the Plan and the Confirmation Order, all documents and agreements necessary to implement the Plan were executed or will be executed in accordance with the terms of the Plan and the Confirmation Order. All expenses arising from the administration of the Reorganized Debtor's estate and chapter 11 case, including court fees and fees arising under 28 U.S.C. § 1930(a)(6) (the "**Section 1930 Fees**"), have been paid or will be paid in accordance with section 2.5 of the Plan and paragraph V of the Confirmation Order.

10. To date, the Reorganized Debtors have collectively paid to the United States Trustee for Region 7 (the "**U.S. Trustee**") a total of approximately $3.29 million in quarterly fees. Accordingly, the Reorganized Debtor is seeking to close the Remaining Case *nunc pro tunc* to December 31, 2022, to avoid having to pay additional U.S. Trustee fees for the first quarter of 2023, which the U.S. Trustee may assert is payable on dividends issued to equity holders by the Reorganized Debtor in the first quarter of 2023. However, such dividend issuances were solely for tax purposes and not distributions made pursuant to the Plan.

11. The Reorganized Debtor believes there are no other substantive motions, contested matters, or adversary proceedings, to be resolved in the Remaining Case.

### U.S. Bank Settlement

12. Pursuant to the Court's *Order (I) Approving Settlement Agreement and (II) Dismissing Chapter 11 Case* [Docket No. 1417] (the "**U.S. Bank Settlement Order**") entered on August 19, 2021, U.S. Bank National Association ("**U.S. Bank**") holds a contingent, Allowed Class 7 General Unsecured Claim in the maximum amount of $5 million, subject to the terms of the U.S. Bank Settlement Order ("**U.S. Bank Claim**").

13. As discussed above, CBL established the Disputed Claims Reserve in accordance with the Plan and Confirmation Order, which included sufficient funds to pay the U.S. Bank Claim, if necessary. To date, the contingencies established in the U.S. Bank Settlement Order have not occurred and the funds must still be reserved.

14. As such, in connection with the closure of the Remaining Case, the Reorganized Debtor will transfer plan consideration sufficient to satisfy a $5 million Class 7 General Unsecured Claim from the Disputed Claims Reserve held with Epiq Corporate Restructuring, LLC (the "**Claims Agent**") to an account held by the Reorganized Debtor for the

benefit of U.S. Bank and held for the contingent benefit of the Consenting Noteholders (the "**Trust Account**"). For the avoidance of doubt, upon liquidation of the U.S. Bank Claim, the Reorganized Debtor shall make distributions from the Trust Account in accordance with the Plan and the U.S. Bank Settlement Order.

## Basis for Relief

15. Section 350(a) of the Bankruptcy Code provides that "[a]fter an estate is fully administered and the court has discharged the trustee, the court shall close the case." 11 U.S.C. § 350(a). Bankruptcy Rule 3022, which implements section 350 of the Bankruptcy Code, further provides that "[a]fter an estate is fully administered in a chapter 11 reorganization case, the court, on its own motion or on motion of a party in interest, shall enter a final decree closing the case." Fed. R. Bankr. P. 3022.

16. The term "fully administered" is not defined in either the Bankruptcy Code or the Bankruptcy Rules. The Advisory Committee Note to Bankruptcy Rule 3022, however, sets forth the following non-exclusive factors to be considered in determining whether a case has been fully administered:

   a) whether the order confirming the plan has become final;

   b) whether deposits required by the plan have been distributed;

   c) whether the property proposed by the plan to be transferred has been transferred;

   d) whether the debtor or its successor has assumed the business or the management of the property dealt with by the plan;

   e) whether payments under the plan have commenced; and

   f) whether all motions, contested matters, and adversary proceedings have been finally resolved.

Fed. R. Bankr. P. 3022, Advisory Comm. Note (1991).

5

17. Courts have generally considered the six factors listed in the Advisory Committee Note to determine whether a case has been fully administered. *See, e.g.*, *In re Clayton*, 1996 WL 661099, summary op. at *1–2 (5th Cir. 1996) ("Although rule 3022 does not define 'fully administered,' the Advisory Committee Notes provide some guidance, listing various factors a court should consider in determining whether an estate has been fully administered"); *In re JCP Props., Ltd.*, 540 B.R. 596, 605 (Bankr. S.D. Tex. 2015) (analyzing Advisory Committee Notes); *In re Valence Tech., Inc.*, Ch. 11 Case No. 12-11580-CAG, 2014 WL 5320632, at *3 (Bankr. W.D. Tex. Oct. 17, 2014); *In re Gould*, 437 B.R. 34, 37 (Bankr. D. Ct. 2010); *In re Jay Bee Enter., Inc.*, 207 B.R. 536, 538 (Bankr. E.D. Ky. 1997). The six factors, however, are merely guidelines that aid a court's determination, and each of the factors need not be present before a court enters a final decree. *See Mold Makers*, 124 B.R. 766, 768 (Bank. N.D. Ill. 1990) ("[A]ll of the factors in the Committee Note need not be present before the Court will enter a final decree"); *see also Walnut Associates v. Saidel*, 164 B.R 487, 493 (E.D. Pa. 1994).

18. Courts have previously entered final decrees notwithstanding remaining future payments contemplated under a chapter 11 plan. *See, e.g., In re Gen. Dev. Corp.*, 180 B.R. 303, 306 (Bankr. S.D. Fla. 1995) (the fact that there might be further redistribution of stock and notes by reorganized debtor as well as continuing payments of cash to certain creditors did not prevent bankruptcy court from entering final decree closing consolidated Chapter 11 cases based on substantial consummation of Chapter 11 plan); *In re Johnson*, 402 B.R. 851, 856 (Bankr. N.D. Ind. 2009) ("Although the debtor has not completed the plan payments, that does not prevent a case from being fully administered."); *In re Mendez*, 464 B.R. 63, 65 (Bankr. D. Mass. 2011) (an individual Chapter 11 case need not remain open during the entire post-confirmation period only because a discharge has not been entered and plan payments have not been completed).

6

Indeed, the Advisory Committee Notes to Bankruptcy Rule 3022 expressly provide that "entry of a final decree closing a chapter 11 case should not be delayed solely because the payments required by the plan have not been completed." Fed. R. Bankr. P. 3022, Advisory Comm. Note.

19.     Bankruptcy courts have adopted the view that "these factors are but a guide in determining whether a case has been fully administered, and not all factors need to be present before the case is closed." *In re SLI, Inc.*, No. 02-12608 (WS), 2005 WL 1668396, at *2 (Bankr. D. Del. June 24, 2005) (citing *In re Mold Makers, Inc.*, 124 B.R. 766, 768-69 (Bankr. N.D. Ill. 1991)); *see also In re Federated Department Stores, Inc*., 43 Fed. Appx. 820, 822 (6th Cir. 2002) ("A court should review each request for entry of a final decree on a case-by-case basis and analyze the factors set forth in Rule 3022, along with any other relevant factors, in determining whether an estate has been fully administered."); *In re Kliegl Bros. Universal Elec. Stage Lighting Co.*, Inc., 238 B.R. 531, 542 (Bankr. E.D.N.Y. 1999) (recognizing that bankruptcy courts weigh the factors contained in the advisory committee note when deciding whether to close a case); *Ericson v. IDC Servs., Inc. (In re IDC Servs., Inc.)*, Ch. 11 Case No. 93 B 45922 (SMB), 1998 WL 547085, at *3 (S.D.N.Y. Aug. 28, 1998) ("[T]he approach that looks to the Advisory Note provides a more complete and flexible standard for determining when to close a chapter 11 case, and is therefore preferable."); *In re Jay Bee Enters., Inc.*, 207 B.R. 536, 538 (Bankr. E.D. Ky. 1997) ("Rule 3022 allows the court flexibility. It does not require that a chapter 11 case be kept open until all awarded fees and allowed claims have been paid in accordance with the confirmed plan or until the statutory fees . . . have been paid."); *Walnut Assocs. v. Saidel*, 164 B.R 487, 493 (E.D. Pa. 1994) ("[A]ll of the factors in the Committee Note need not be present before the Court will enter a final decree.").

20.     In addition to the factors set forth in the Advisory Committee Note, courts have considered whether the plan has been substantially consummated. *See, e.g., JCP Props*, 540

7

B.R. at 605 ("[S]ubstantial consummation is the pivotal question here to determine the propriety of closing the [debtor's] case by Final Decree."); *In re Gates Cmty. Chapel of Rochester, Inc.*, 212 B.R. 220, 224 (Bankr. W.D.N.Y. 1997) (considering substantial consummation as a factor in determining whether to close a case); *Walnut Assocs.*, 164 B.R. at 493 (same). Section 1101(2) of the Bankruptcy Code defines "substantial consummation" as "(a) transfer of all or substantially all of the property proposed by the plan to be transferred; (b) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and (c) commencement of distribution under the plan."

### The Circumstances Warrant Closing the Remaining Case

21. The chapter 11 case of the Reorganized Debtor has been "fully administered" within the meaning of section 350 of the Bankruptcy Code making it appropriate for the Court to enter a final decree closing the Remaining Case. Among other things:

   a) the Confirmation Order has become final and is non-appealable, and the Effective Date occurred;

   b) all payments required to be made pursuant to the Plan have been paid or will be paid;

   c) there are no open contested matters or adversary proceedings that require the Remaining Case to remain open;

   d) substantially all of the distributions provided for under the Plan, including initial creditor distributions and funding of the Fee Escrow Account and Disputed Claims Reserve, have been made;

   e) all of the transactions contemplated by the Plan have closed; and

   f) the Plan has been substantially consummated within the meaning of section 1101(2) of the Bankruptcy Code.

22. The foregoing factors support closing the Remaining Case. The fact that the Reorganized Debtor is still reviewing and resolving a small amount of claims does not require the Remaining Case to remain open until all such claims are resolved and distributions are made.

*Jay Bee Enters.*, 207 B.R. at 539 (finding that Bankruptcy Rule 3022 "does not require that a chapter 11 case be kept open until all awarded fees and allowed claims have been paid in accordance with the confirmed plan or until the statutory fees . . . have been paid"). Moreover, with respect to the U.S. Bank Claim, the Debtors funded the Disputed Claims Reserve with consideration to be distributed to U.S. Bank if and when such claim becomes an Allowed Claim.

23. In addition to the reasons explained above, closing the Remaining Case will relieve the Court, the U.S. Trustee, and the Reorganized Debtor from each of their administrative burdens with respect to the Remaining Case. Indeed, closing the Remaining Case will alleviate the Reorganized Debtor's obligation to pay quarterly fees under section 1930 of title 28 of the United States Code for this case. *See In re A.H. Robins Co., Inc.*, 219 B.R. 145, 149 (Bankr. E.D. Va. 1998) (finding that "the obligation to pay UST fees terminates upon closure, dismissal, or conversion of a Chapter 11 case, and will not be paid *ad infinitum*"). As stated above, the Reorganized Debtors have paid approximately $3.29 million in U.S. Trustee fees in these cases and estimate that the U.S. Trustee will seek to collect additional fees for the first quarter of 2023 based upon dividends issued to equity holders. Unless and until the Court enters a final decree closing the Remaining Case *nunc pro tunc* to December 31, 2022, the Reorganized Debtor must continue paying U.S. Trustee fees.

24. The Court's role in administering the chapter 11 case of the Reorganized Debtor is complete. "The court should not keep [a] case open only because of the possibility that the court's jurisdiction may be invoked in the future." Fed. R. Bankr. P. 3022, Advisory Comm. Notes (1991). Furthermore, any party in interest may petition the Court to reopen the Remaining Case or any of the other chapter 11 cases pursuant to section 350(b) of the Bankruptcy Code,

9

despite the entry of the final decree.  *See* Fed. R. Bankr. P. 5010.  Accordingly, entry of a final decree closing the Remaining Case is warranted.

## Notice

25. Notice of this Motion will be provided to the U.S. Trustee and to all parties registered to receive service via the Electronic Case Filing System in the Remaining Case.

## No Previous Request

26. No previous request for the relief sought herein has been made by the Reorganized Debtor to this or any other court.

*[Remainder of the Page Intentionally Left Blank.]*

WHEREFORE the Reorganized Debtor respectfully requests that the Court grant the relief requested herein and such other and further relief as it deems just and proper.

Dated: March 10, 2023
       Houston, Texas

Respectfully submitted,

  /s/ Alfredo R. Pérez
WEIL, GOTSHAL & MANGES LLP
Alfredo R. Pérez (15776275)
700 Louisiana Street, Suite 1700
Houston, Texas 77002
Telephone: (713) 546-5000
Facsimile:  (713) 224-9511
Email: Alfredo.Perez@weil.com

– and –

WEIL, GOTSHAL & MANGES LLP
Ray C. Schrock, P.C. (admitted *pro hac vice*)
Garrett A. Fail (admitted *pro hac vice*)
Moshe A. Fink (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York  10153
Telephone:  (212) 310-8000
Facsimile:   (212) 310-8007
Email:  Ray.Schrock@weil.com
       Garrett.Fail@weil.com
       Moshe.Fink@weil.com

*Attorneys for Reorganized Debtors*

**Certificate of Service**

I hereby certify that, on March 10, 2023, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

                                              */s/ Alfredo R. Pérez*
                                              Alfredo R. Pérez